The determination of the main question presented depends upon the nature of the legacies bequeathed by the third clause of the will — whether they were intended to be specific legacies, confined to the testator's savings accounts, or general or demonstrative legacies of definite sums of money which, at the time of the execution of the will, happened to be in banks.
In determining the question, consideration must be given to the whole will; to the circumstances under which it was prepared and executed; to the situation in which the testator then was as regards his property; to the relation and disposition he bore toward his legatees and to his presumed intention to make disposition of his whole estate for the benefit of the beneficiaries named by him, for the intention of a testator upon the subject of specific legacies is the principal object to be ascertained. Norris v. Thomson, 16 N.J. Eq. 542; Prendergast
v. Walsh, 58 N.J. Eq. 149. Whether the gift of a sum of money invested in a particular way is specific or not depends upon the question whether the testator meant his legatee to have the sum, however invested, or whether the actual investment, is an important part of the gift (Langstroth v. Golding, 41 N.J. Eq. 49), and a clear intention must appear to make a legacy specific. Courts are disposed to consider a legacy general or demonstrative if the will admits of such construction. Johnson
v. Conover, 54 N.J. Eq. 333; Blair v. Scribner, 67 N.J. Eq. 583; Allen v. Allen, *Page 412 76 N.J. Eq. 245; Mecum v. Stoughton, 81 N.J. Eq. 319; In reU.S. Fidelity, c., Co., 90 N.J. Eq. 254.
The will was written by a person somewhat handicapped in the use of English and unversed in the preparation of such an instrument. It was executed while the testator was in a hospital and probably in contemplation of death. The time fixed for the performance of his contract to purchase real estate had elapsed and there is no evidence that he had sought or obtained an extension. He probably contemplated that because of the serious nature of his malady he must forfeit his contract and die, leaving an estate consisting practically wholly of money in bank. His thoughts turned to the natural objects of his bounty, who were his three sisters (next of kin), his churches and Mrs. Patanska, the last being a person in whose family he had been a boarder many years and who had nursed and cared for him in his illness. Another sister had died leaving children whom the testator had never seen, hence, he did not mention them in his will. He manifestly intended to distribute the entire estate he then possessed among his beneficiaries. No indication appears that he intended they should receive the sums bequeathed to them, only in case his property remained unchanged in character to his death. Not only is that thought not mentioned in the will, but on the contrary it deals with personal property only and makes no disposition of real estate. If he was not expecting to take title to the real estate but was expecting to die leaving his money in bank, then his will would effectuate his purpose. If he did expect to withdraw his money from bank and use it to pay for the real estate, he disclosed no intention that in such event his bequests should adeem and the real estate go elsewhere, and he died intestate as to his real estate. After his discharge from the hospital he did not dispose of the subject of his bequests, in the sense that he consumed it; he merely removed it from the place where it was when he executed his will, to another place where it was when he died. I have reached the conclusion that it was the testator's intention that his legatees were to receive the sums of money specified, in all events; that by referring to his *Page 413 
savings deposits he merely intended to indicate such funds as the primary source from which his bequests could be paid, and that he did not intend that such portion of his estate as should be found on deposit in banks at his death should be the only source for the payment of legacies. I think that the clear intention of the testator as expressed in his will, when read in the light of the circumstances under which it was executed, is as if he had said: "My estate, now consisting wholly of money in bank, shall be divided and applied as follows: $2,000 to my sister Pazia Dugan-Kuznia," and so on and that it should be so construed that the bequests therein made are general legacies. In reaching this conclusion I am guided by the decisions I have cited above.
The testator's personal estate is insufficient to pay his legacies, and since I have concluded that it was his intention to give his legatees, generally, the respective sums stated in the will, I further conclude that the legacies are chargeable against the real estate of which the testator died seized. The provision in the will that Mrs. Patanska "has right to keep and retain * * * all other moneys, valuable papers and my belongings which shall be left after my death," even if a sufficient residuary devise to include real estate, shows an intention to give her only what remained of his estate after payment made of the specific sums given to his beneficiaries, but these words, in their ordinary meaning, refer to personal property only, and, in fact, the testator dealt solely with personal property when he executed his will. Therefore, and also because I am compelled to hold that Mrs. Patanska can take nothing under the will and that this and other provisions for her are void, for a reason hereinafter stated, the testator died intestate as to his real estate and the same descended to his heirs at law, subject to the legacies. No express power of sale is conferred on the executors, but I shall hold that they have an implied power to sell for the purpose of raising money with which to pay legacies. In their bill (filed more than a year and a half ago) they allege and their proofs on the hearing show, that they have an offer of $25,000 for the property, which they claim is a fair price, and their bill prays *Page 414 
that they be empowered to make sale for such sum. Except as the parties contend that the legacies are specific and are payable out of money in bank only, no one objected to an executors' sale at the figure named and I shall therefore approve said sale unless the executors find that a better price can now be obtained. The executors are advised that the net proceeds of sale should be applied first to the payment of their commissions, next to the payment of legacies (except to Mrs. Patanska) and the residue paid to the testator's heirs at law. The counter-claim for partition filed by the defendant Steve Druga et al., as heirs at law, will be dismissed.
Mrs. Patanska can take nothing under the will because she is a witness to the execution thereof. The statute (Comp. Stat. p.5862 § 4) provides: "That if any person * * * shall attest the execution of any will * * * to whom any beneficial devise, legacy, estate, interest, gift or appointment of or affecting any real or personal estate * * * shall be thereby given or made, such devise, legacy, estate, interest, gift or appointment shall, so far only as concerns such person attesting the execution of such will, * * * be utterly null and void." This provision does not affect her appointment as an executor (Lippincott v.Wikoff, 54 N.J. Eq. 107), but it does make void the bequests or legacies therein given her. Case v. Hasse, 83 N.J. Eq. 170.
Her counsel argues that the statute does not apply because being one of three witnesses, she was a superfluous witness, and the will could be proved without her testimony, but the statute applies by its terms to any person who shall attest the execution of a will and makes void any legacy, estate or interest given to such person. *Page 415