This is a bill for redemption and to remove a cloud upon the title to premises of complainant.
It appears from the testimony that Edward T. Weyer conveyed certain premises, with the business, to complainant's husband, Edward W. Weyer. Edward W., the son, in return gave a $5,000 purchase-money mortgage to the father, and a $5,000 purchase-money mortgage and also $5,000 in cash to his sister Emma. The $5,000 mortgage to Emma was subsequently paid off and this suit is brought to redeem the purchase-money mortgage of $5,000 to the father. The testimony also shows that the father intended to retire from participation in the business and apparently desired to compensate his children and his daughter-in-law for services rendered to him in conducting the business. Edward W. Weyer and his wife managed and worked the business alone and lived there until the death of the former in August, 1928.
Defendants have filed a counter-claim in which they allege an oral promise made by the intestate, Edward W. Weyer, to will the property to his father or sisters. It seems to me that the only proof offered at the trial, that is, oral proof, is inadmissible as being contrary to the statute of frauds. One principle found in cases where a conveyance has been made or an act performed in return for a promise is absent in this case. That is, one party performed his part of the agreement, and the other party only gave a promise to do something in future. In Johnson v.Hubbell, 10 N.J. Eq. 332 (at p. 339), the court said:
"The part of the agreement which the son was to perform was to be performed in praesenti, and that part to be performed by the father was to be performed in futuro."
The case of Lozier v. Hill, 68 N.J. Eq. 300, sustains this contention. In that case complainant conveyed to her brother a lot for the consideration of $1,000, although the consideration stated in the deed was $1,450. It was alleged that the brother promised to build a house on the lot and devise it to the complainant. Vice-Chancellor Stevenson said: *Page 114 
"The alleged contract of Mr. Kip to devise the land in question to the complainant is within the statute of frauds. BrowneFraud, § 263; Johnson v. Hubbell, 10 N.J. Eq. (2 Stock.)332; Gould v. Mansfield, 103 Mass. 408; Harder v. Harder, 2Sandf. Ch. 17.
 * * * * * * *
"No facts are proved which exempt the alleged oral contract from the operation of the statute of frauds.
"There was no fraud in the transaction. No fraud will be effectuated in case the promise to devise was made and the complainant fails to get the land by devise or by the decree of this court. In such case the complainant will not be defrauded, but will merely suffer from the non-performance of a promise which is not legally enforceable.
 * * * * * * *
"If the conveyance by the complainant to Mr. Kip was such part performance as takes the alleged verbal promise out of the operation of the statute, I see no reason why any one of ten thousand grantors of land may not get his land back by a lease, a conveyance in fee or a decree by simply proving by parol that he sold his land at a smaller price than he otherwise would have accepted upon the verbal promise of the grantee to lease, convey or devise it back. That all conveyances of land after the decease of the grantee are subject to such a possible defeasance, is certainly a very startling suggestion.
"The conclusion on this branch of the case is that the statute of frauds is a complete defense to the whole case made out by the complainant, assuming that the parties intended to make and did make, so far as possible by mere words, the contract set forth in the bill of complaint.
"3. Precisely the same result is reached if we exclude the statute of frauds from consideration and apply the wellsettled rules which protect written contracts from impeachment by parol testimony. The effect of giving force to this alleged oral contract would be to alter radically a most solemn contract in writing — a conveyance of land under seal — and to convert what on its face is an absolute conveyance *Page 115 
of the whole legal and equitable estate into a conveyance of a life estate only, leaving an equitable estate in reversion vested in the grantor.
"As has already been pointed out in discussing the relation of the statute of frauds to the case, no actual or constructive fraud or other sufficient reason has been shown which would justify any court in dealing in such a violent manner with this plain written contract. No exception on behalf of the complainant is established which takes her case out of the operation of the wholesome general rule excluding parol testimony when offered to alter the meaning of a complete, intelligible, written contract.
"In connection with this point it is well to consider the appalling results which might follow if this grantor, who made this conveyance of land in fee, after sleeping on her rights upon a plea of poverty or mistake of law until her grantee and her grantee's devisee have both died, should be allowed by parol testimony to inject into the written contract a contemporaneous oral agreement, and thereby establish in herself a full reversionary ownership.
 * * * * * * *
"If the land has been conveyed for no consideration, or for a plainly inadequate consideration, then the alleged parol contract would have explained a transaction which otherwise would appear to have been an extraordinary one, involving an unreasonable and improvident gift.
"There is not a single act shown to have been performed by either party to the alleged parol contract which is not referable to the written contract, or which can be attributed to the parol contract except by calling in parol evidence to contradict the written contract. Of course, I leave out of view the claim that the land was sold for an inadequate price, because I have found that such claim is entirely unsupported by the proofs."
There is no question but that in the case before me complainant's husband gave a substantial consideration for the property. As there is no evidence that the consideration was inadequate, I must assume that it was adequate. It seems *Page 116 
perfectly clear to me, therefore, that the case above cited covers the matter and that the oral testimony of the alleged agreement is inadmissible.
It should be further noted that the alleged oral agreement is not proved with the clearness and distinctness which is necessary under the cases.
Mr. Justice Fort, speaking for the court of errors and appeals, said in Cooper v. Colson, 66 N.J. Eq. 328 (at p. 330):
"In every case, in order to take the case out of the statute on the ground of part performance, irrespective of other questions, two things are requisite. The terms of the contract must be established by the proofs to be clear, definite and unequivocal, and the acts relied on as part performance must be exclusively referable to the contract. Wallace v. Brown, 2 Stock. 308;Brown v. Brown, 6 Stew. Eq. 650.
 * * * * * * *
"She in no way changed her mode of living, or course of life, or life work, because of them. What she did was of such a character as to be easily and adequately compensated on thequantum meruit. There is nothing to establish that she had abandoned any other plan of life work or calling to devote herself to the deceased in consideration of the promised conveyance of a farm. Most scrupulous care should be exercised by the courts in this class of cases, and especially where one of the alleged contracting parties is dead. An allegation of an agreement to convey is easily made, and casual conversations or jocular remarks of intent to devise or convey at death can readily be turned into serious import. The statute declares that agreements to convey land not in writing are void. If equity is to overthrow the statute, on the ground that, owing to the peculiar character of the facts in a given case, it would be a fraud not to hold one of the contracting parties estopped from setting up the statute, such power should be exercised upon the most clear proof, not only of the contract to devise or convey the land in question, but of the fact that the rendition of the services was wholly referable to the contract to convey, and solely predicated upon that agreement, and that proper and adequate compensation for the services *Page 117 
cannot otherwise be made, because of the fact that, in reliance upon the contract, it appears reasonably probable that the complainant has irretrievably changed the whole course of his life and circumstances in order to fulfill his part of the agreement."
The contention is made that the complainant has no standing in court because she does not come within the provisions of "A supplement to an act entitled `An act directing the descent of real estate,' approved March ninth, one thousand eight hundred and seventy-seven." P.L. 1926 ch. 41 p. 77. The theory of defendants seems to be that the statute is not retroactive so as to include land purchased before the act took effect. However, the statute reads:
"Be it enacted by the senate and general assembly of the State of New Jersey:
1. Hereafter, when any married persons shall die seized of any lands, tenements or hereditaments, in his or her right in fee-simple without devising the same in due form of law and without leaving lawful issue but leaving a husband or wife him or her surviving, then and in that case the said person so surviving, whether it be husband or wife, shall take an entire estate in fee-simple in the deceased's lands, tenements or hereditaments; provided, however, this act shall only apply to property of which husband or wife may die seized of, which had been purchased by husband or wife during coverture.
2. All acts or parts of acts inconsistent with this act are hereby expressly repealed and this shall take effect immediately."
The word "hereafter" refers to death and not to purchase. At the end of the statute these words appear:
"* * * provided, however, this act shall only apply to property of which husband or wife may die seized of, which had been purchased by husband or wife during coverture."
It does not seem to be necessary to discuss the further contention that the word "purchase" is not used in the statute in its technical sense. However, a valuable consideration was paid for the property which would seem to dispose of that argument.
I will advise a decree in accordance with the prayer in complainant's bill. *Page 118