LOUISA STABEL AND HENRIETTA HETTERICH, PLAINTIFFS, v. CHARLES C. GERTEL, DEFENDANT.

Decided March 27, 1933.

For the plaintiffs, *Benjamin J. Darling.*

For the defendant, *Gross & Gross.*

ACKERSON, C. C. J. This is an action in ejectment and the answer thereto is a general denial.

The matter now comes before me for decision, without a jury, upon an agreed state of facts. Turning to this agreement I find that Edward Schoch died testate on May 19th, 1916, seized of the premises in question in this action. His only heirs-at-law were his three daughters, Louisa Stabel, Henrietta Hetterich (who are the plaintiffs herein) and Margaret Gertel, wife of Charles C. Gertel, the defendant. His will was probated by the surrogate of Hudson county on June 10th, 1916, and by the third item thereof he devised the premises in question to his daughter, Margaret Gertel, in fee-simple. She was married to the defendant, Charles C. Gertel, on October 23, 1903, this being the first marriage of either party. No children were born of the marriage, and on March 11th, 1932, the said Margaret Gertel died intestate, survived by her two sisters, who are the plaintiffs herein, and her husband, the defendant. Since March 11th, 1932, the defendant has been in possession of said premises, has occupied a part hereof, has collected the rents, issues and profits therefrom, which he retains, and he refuses to surrender possession to the plaintiffs.

The question to be decided is whether the two plaintiffs as the surviving sisters of said Margaret Gertel are entitled to the possession of the premises in question, or whether her husband, the defendant, is entitled thereto.

At the time of his marriage, October 23d, 1903, the defendant was entitled to a prospective right of curtesy in the lands his wife then owned or which she might thereafter acquire, such prospective right to become inchoate upon the birth of issue of the marriage and consummate upon his surviving her. Curtesy consummate was then the right to hold said lands for his life in case he survived his wife. *Reese* v. *Stires,* 87 *N. J. Eq.* 32; 103 *Atl. Rep.* 679; *Bucci* v. *Papovich,* 93 *N. J. Eq.* 121; 115 *Atl. Rep.* 95; *affirmed,* 93 *N. J. Eq.* 511; 116 *Atl. Rep.* 923. In the event of his wife's death without having had issue, the defendant could take nothing, and said lands would descend to his wife's sisters. 2 *Comp. Stat.* 1910, *p.* 1918, § 2.

Since the defendant's wife died without having had issue

born of her marriage to the defendant, it is apparent, that unless legislation passed subsequent to said marriage conferred some estate upon the defendant as the surviving spouse, he had no interest in the premises in question at the time of his wife's death.

Without detailing all of such subsequent legislation, it is sufficient to say that two statutes dealing with the subject of the interest of a surviving husband in the lands of his deceased wife have emerged therefrom, which were in force at the time of the death of the defendant's wife. The first of these was intended to create an estate by descent in certain cases, while the second pertains to rights arising purely out of the marital relation by way of curtesy.

The first of these two acts was passed in 1926, and is entitled "A supplement to an act entitled 'An act directing the descent of real estate,' &c. *Pamph. L.* 1926, *p.* 77. This act provides *inter alia,* as follows:

"Hereafter, when any married person shall die seized of any lands, tenements or hereditaments, in his or her right in fee-simple without devising the same in due form of law and without leaving lawful issue but leaving a husband or wife, him or her surviving, then and in that case the said person so surviving whether it be husband or wife, shall take an entire estate in fee-simple in the deceased's lands, tenements or hereditaments; provided, however, this act shall only apply to property of which husband or wife may die seized of, which had been purchased by husband or wife during coverture."

The second act was passed in 1927, to take effect January 1st, 1929, and is entitled "An act relative to curtesy." It provides that the husband of a woman who dies intestate, or otherwise, shall be endowed for life of one-half of the lands whereof his wife "was seized of an estate of inheritance, *at any time during* the coverture," whether lawful issue be born alive or not. *Pamph. L.* 1927, *p.* 128.

That this latter act was not intended to repeal the former, but that both were intended to stand together, was definitely expressed by the legislature in a supplement to *Pamph. L.*

1927, *p.* 128, which supplement was approved March 28th, 1927, to take effect January 1st, 1929 (*Pamph. L.* 1927, *p.* 474), wherein it is provided that nothing contained in *Pamph. L.* 1927, *p.* 128 (the "Curtesy act"), "shall be construed to in any way affect or impair the provisions" of *Pamph. L.* 1926, p. 77, which is the act amending the "Descent act," as aforesaid. Nor is this last mentioned act in any way affected by *Pamph. L.* 1928, *p.* 380, which merely *amends* the *"Curtesy act"* (*Pamph. L.* 1927, *p.* 128) by substituting the clause "whether issue be born or not" for the clause "whether *lawful* issue be born *alive* or not" as appearing in the original act.

It is apparent, therefore, that the legislature intended, by the foregoing statutes, to provide two different methods by which a husband might acquire an estate in the lands of his wife, one by descent as the heir of his wife under certain specified circumstances, the other by curtesy, arising simply from the marital relationship alone.

There is no incongruity in saying that a husband may take lands as the heir of his wife, for he takes simply by descent that of which his wife was seized at the time of her death, and which must go to some heirs, in the absence of any testamentary disposition. The legislature certainly has the power to make a surviving husband, as well as a child, an heir. *May* v. *Fletcher,* 40 *Ind.* 575, 581. And that is what *Pamph. L.* 1926, *p.* 77, really does for not only is it specifically designated as a supplement to "An act directing the *descent* of real estate," but the act itself, in addition to other restrictions, operates only on land of which the deceased spouse "shall *die seized* * * * *without devising the same,"* &c.

The "Curtesy act" (*Pamph. L.* 1927, *p.* 128, as amended by *Pamph. L.* 1928, *p.* 380) removes the common law requirement of issue being born alive of the marriage before curtesy could become inchoate or consummate, and puts curtesy on exactly the same footing as dower (*Pamph. L.* 1927, *p.* 124), as a *present,* fixed and vested valuable interest of a husband in his wife's estate of inheritance in land of which she is seized, defeasible upon predeceasing her. *Walker* v. *Bennett,* 107

*N. J. Eq.* 151; 152 *Atl. Rep.* 9. It therefore materially effects the right of curtesy, and gives a husband a present interest to a degree he did not before possess, and imposes an additional burden upon the wife's land not previously existing, by removing one of the conditions theretofore essential to curtesy becoming consummate.

It is now settled in this state that legislation which affects, enlarges or diminishes the right of dower or curtesy, can only operate on land acquired after its passage, since to make it applicable to lands previously acquired would be contrary to constitutional inhibition. *Walker* v. *Bennett, supra; In re Alexander,* 53 *N. J. Eq.* 96; 30 *Atl. Rep.* 817; *Gerhardt* v. *Sullivan,* 107 *N. J. Eq.* 374; 152 *Atl. Rep.* 663; *Riley* v. *Riley,* 107 *N. J. Eq.* 372. It follows, therefore, that the "Curtesy act" of 1927, cannot confer any interest upon the defendant because the land in question was acquired by defendant's wife prior to its passage.

The defendant, however, does not claim an interest under the "Curtesy act" of 1927, but insists that he is entitled to an estate in fee-simple in the premises in question by virtue of the above-quoted supplement to the "Descent act." *Pamph. L.* 1926, *p.* 77.

The plaintiffs argue that this act does not apply for two reasons. First, it is claimed that it cannot be held to give any estate in lands acquired by the wife prior to the passage of such legislation under the rule just noticed in considering the applicability of the "Curtesy act" of 1927. The difficulty with this contention is that *Pamph. L.* 1926, *p.* 77, is an act pertaining to *descent,* and in effect makes the husband an heir of his wife under certain circumstances, and unlike the "Curtesy act" of 1927, only applies to land of which the wife *dies seized* without issue and without *devising* the same, and does not create a present vested interest prior to the wife's death as in the case of curtesy. The power of the legislature over dower and curtesy rights is different than its power over the descent of real estate. As was said in the case of *Gerhardt* v. *Sullivan, supra:*

"It is not sound reasoning to liken this power" (over

dower) "to that exercised by the legislature over the law of descent and of wills. These laws confer privileges of devolution or of transfer of property *at death* which the legislature, in its wisdom, may change or altogether abolish. They do not affect rights safeguarded by the fundamental law and immune to legislative action."

It is true that the case of *McGoldrick* v. *Grebenstein,* 108 *N. J. Eq.* 335; 154 *Atl. Rep.* 844, seems to give countenance to the plaintiffs' contention that *Pamph. L.* 1926, *p.* 77, does not apply to land acquired by a wife prior to its passage, but the distinction between legislation pertaining to curtesy and that pertaining to descent, hereinabove noticed, seems not to have been considered by the court, and the rule applicable to dower and curtesy was applied indiscriminately to all legislation pertaining to a husband's interest in his wife's real estate. In *Weyer* v. *Weyer,* 106 *N. J. Eq.* 112, 117; 150 *Atl. Rep.* 232, it was held that the last mentioned statute was retroactive so as to include land purchased before the act took effect, and with this conclusion I am in complete accord.

The second reason assigned by plaintiffs against the applicability of *Pamph. L.* 1926, *p.* 77, to the lands in question is that they are not such as "had been purchased" by defendant's wife during coverture as required by the act, because she acquired title thereto by devise from her father. In other words, plaintiff's contention is that the word "purchased" is not to be given its technical legal meaning, but its common meaning of acquired for a consideration. With this contention I do not agree.

In construing this word as it appears in the statute in question, Vice-Chancellor Berry in the course of his opinion in *Malague* v. *Marion,* 107 *N. J. Eq.* 333; 152 *Atl. Rep.* 637, said:

"Title to real estate is, of course, acquired either by descent or by purchase. Title by descent is that title which one acquires by law as heir to the deceased owner. Title acquired in any other way must be by purchase."

The same Vice-Chancellor, in considering the same statute in *Borquist* v. *Ferris,* 112 *N. J. Eq.* 324, 327; 162 *Atl. Rep.* 38, said:

"The weight of authority inclines toward the acceptance of the technical meaning of the word in legislative enactments." * * * "It is urged by the defendant that the legislative design was to protect husbands and wives who had contributed effort or money, or both, in the acquisition of real estate; and for that reason the statute applies only to the property actually acquired during the marriage, the reasonable assumption being that it was acquired by their common effort. It is entirely possible that such a construction would be equitable and convenient; but it is too speculative and conjectural."

For the reasons already stated, I have reached the conclusion that the defendant is entitled to an estate in fee-simple in the lands in question by virtue of *Pamph. L.* 1926, *p.* 77.

The court, therefore, finds that the defendant is entitled to the possession of the whole of the premises described in the complaint as against the plaintiffs.